## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,**     ) | |
| ) | |
| v.     ) | **Criminal Action No. 08-93 (RJL)** |
| ) | |
| **JOHN STAGLIANO, et al.,**     ) | |
| ) | |
| **Defendants.**     ) | |

### MEMORANDUM OPINION
(February *19* 2010) [#17, 20, and 21]

The defendants—John Stagliano, John Stagliano, Inc., and Evil Angel

Productions, Inc.—challenge the constitutionality of four federal statutes that

criminalize the interstate trafficking of obscenity.  They move to dismiss the

Indictment charging them with offenses under 18 U.S.C. § 1462, 18 U.S.C. §

1465, 18 U.S.C. § 1466, and 47 U.S.C. § 223(d).  In particular, they contend that

these statutes are unconstitutionally vague and overbroad as applied to Internet

speech.  They also contend that the statutes are unconstitutional in light of recent

Supreme Court case law that they say establishes a substantive due process right to

sexual privacy broad enough to include the right to distribute obscene materials.

Having considered the defendants' arguments, the Court concludes that the federal

obscenity statutes charged in the Indictment withstand the defendants' multi-

faceted constitutional challenge.  Accordingly, the Court DENIES their respective

Motions to Dismiss.

## BACKGROUND

The pending Indictment contains seven counts. Counts One and Two charge the defendants with knowingly transporting an obscene motion-picture film in interstate commerce for the purpose of selling or distributing the film, in violation of 18 U.S.C. § 1465.[1] Count Three charges the defendants with knowingly using an interactive computer service for the purpose of distributing in interstate commerce an obscene motion-picture trailer, in violation of 18 U.S.C. § 1465. Counts Four and Five charge the defendants with knowingly using an express company or other common carrier to ship the two films in Counts One and Two from California to a location in Washington, D.C., in violation of 18 U.S.C. § 1462.[2] Count Six charges the defendants with knowingly possessing the obscene

---

[1] Section 1465 specifically provides:
> Whoever knowingly produces with the intent to transport, distribute, or transmit in interstate or foreign commerce, or whoever knowingly transports or travels in, or uses a facility or means of, interstate or foreign commerce or an interactive computer service . . . in or affecting such commerce, for the purpose of sale or distribution of any obscene, lewd, lascivious, or filthy book, pamphlet, picture, film, paper, letter, writing, print, silhouette, drawing, figure, image, cast, phonograph recording, electrical transcription or other article capable of producing sound or any other matter of indecent or immoral character, shall be fined under this title or imprisoned not more than five years, or both.

[2] Section 1462 provides:
> Whoever brings into the United States, or any place subject to the jurisdiction thereof, or knowingly uses any express company or other common carrier or interactive computer service . . . for carriage in interstate or foreign commerce—(a) any obscene, lewd, lascivious, or filthy book, pamphlet, picture, motion-picture film, paper, letter, writing, print, or

items in Counts One, Two, and Three with the intent to distribute those items in interstate commerce while engaged in the business of selling obscene material, in violation of 18 U.S.C. § 1466.[3] Count Seven charges the defendants with knowingly using an interactive computer service to display an obscene image— that is, the movie trailer identified in Count Three—in a manner available to a person under 18 years of age, in violation of 47 U.S.C. § 223(d).[4]

The FBI obtained the materials that form the basis for these charges in the course of investigating allegations that the defendants produce and distribute certain obscene "hard-core pornography." (Gov't Opposition [#23] at 1). After placing an order with the defendants by mailing a form printed from their website, FBI agents in Washington, D.C. received by mail two DVDs—"Milk Nymphos"

---

other matter of indecent character . . . Shall be fined under this title or imprisoned not more than five years, or both . . . .

[3] Section 1466 provides:
(a) Whoever is engaged in the business of producing with intent to distribute or sell, or selling or transferring obscene matter, who knowingly receives or possesses with intent to distribute any obscene book, magazine, picture, paper, film, videotape, or phonograph or other audio recording, which has been shipped or transported in interstate or foreign commerce, shall be punished by imprisonment for not more than 5 years or by a fine under this title, or both.

[4] Section 223(d) provides:
Whoever—(1) in interstate or foreign communications knowingly— . . . (B) uses any interactive computer service to display in a manner available to a person under 18 years of age, any comment, request, suggestion, proposal, image, or other communication that, is obscene or child pornography, regardless of whether the user of such service placed the call or initiated the communication . . . shall be fined under Title 18 or imprisoned not more than two years, or both.

and "Storm Squirters 2 'Target Practice'"—that allegedly contain obscene movies. (*Id.* at 1-2). An agent in Washington also downloaded from the defendants' website a free movie trailer—"Fetish Fanatic Chapter 5"—that the government believes to be obscene as well. (*Id.* at 2). Descriptions of the films are not relevant at this stage, of course, because it is the jury's province to determine whether those films are actually obscene. The issue now before the Court is limited to the legal question of whether the obscenity statutes charged in the Indictment are unconstitutional. The defendants contend that they are. I disagree.

## DISCUSSION

The defendants raise a litany of arguments challenging the constitutionality of the federal obscenity statutes charged in this case. First and foremost, they contend that Section 1465 and Section 223(d), both of which incorporate the "community standards" and "as a whole" elements of the obscenity test set forth in *Miller v. California*, 413 U.S. 15 (1973), are unconstitutionally overbroad and vague as applied to Internet speech. Second, they contend that Section 223(d) is a content-based restriction on speech that fails strict scrutiny under the First Amendment. Because of these constitutional defects, the defendants contend, at a minimum, that Counts Three and Seven of the Indictment must be dismissed. Not surprisingly, the defendants do not stop there. In addition to their overbreadth and vagueness claims, they contend that all counts of the Indictment must be dismissed because individuals have a substantive due process right under the Constitution not only to possess and use obscene materials but to produce and distribute those

4

materials as well. Finally, they contend that obscenity prosecutions in the District of Columbia impermissibly burden the right to copyright work that would be protected elsewhere. Unfortunately for the defendants, I am not persuaded by any of these arguments. How so?

## I.    Overbreadth

The defendants' principal argument, which happens to be their best, is that Section 1465 (charged in Count Three) and Section 223(d) (charged in Count Seven) are unconstitutional as applied to the Internet because the "community standards" and "as a whole" elements of *Miller*'s obscenity test render both statutes overbroad. I disagree.

The First Amendment doctrine of overbreadth is an exception to the normal rule governing facial challenges to statutes. *Virginia v. Hicks*, 539 U.S. 113, 118 (2003). To invalidate a law on its face under this doctrine, one need not show that the law is unconstitutional in every instance; rather, one need only show that the "law punishes a 'substantial' amount of protected free speech." *Id.* In that regard, the overbreadth must "be 'substantial,' not only in an absolute sense, but also relative to the scope of the law's plainly legitimate applications." *Id.* at 120.

Both Section 1465 and Section 223(d) prohibit the use of an interactive computer service to distribute or display "obscene" materials. Beyond dispute is the Supreme Court's repeated admonition "that obscene material is unprotected by the First Amendment." *Miller*, 413 U.S. at 23. Of course, courts have long struggled to draw the line between protected expression and unprotected

obscenity. But after years of jurisprudential uncertainty, the Supreme Court in *Miller* finally settled on a three-prong test for determining whether a particular work is obscene: (1) "whether the average person, applying contemporary community standards would find that the work, taken as a whole, appeals to the prurient interest"; (2) "whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable . . . law"; and (3) "whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value." *Id.* at 24 (internal quotation marks omitted). The Supreme Court later refined this test by incorporating the community standards element of the first prong into the second prong and by mandating that the third prong be evaluated using an objective "reasonable person" standard. *Pope v. Illinois*, 481 U.S. 497, 500-01 (1987).

Because the challenged statutes incorporate the *Miller* test by virtue of their ban on "obscene" material, it appears, at first blush, that there is an exact congruence between the kind of expression the Constitution permits to be punished and the kind of expression the statutes in fact punish. The statutes criminalize, and the defendants have been charged with, the distribution or display of obscene material, and obscene material "has long been held to fall outside the purview of the First Amendment." *Ashcroft v. American Civil Liberties Union*, 535 U.S. 564, 574 (2002) (*ACLU I*). For this reason, the Court rejects out of hand the defendants' argument that Section 223(d)(1), which prohibits use of the

Internet to display "obscene" material in a manner available to minors,[5] is a

content-based regulation that cannot survive strict scrutiny.  (*See* Evil Angel

Productions Mem. [#17] at 13-23).  Because obscenity, as defined in *Miller*, is a

category of speech not protected by the Constitution, statutes like Section 223(d)

that regulate obscene materials in a viewpoint neutral way are not subject to strict

scrutiny.[6]  As such, the Court need only address the defendants central argument

that Section 223(d) and Section 1465 are unconstitutional as applied to the Internet

because the "community standards" and "as a whole" requirements of *Miller*'s

obscenity test render both statutes overbroad.

A.    **"Community Standards" Requirement**

The defendants contend that the federal obscenity statutes, which

incorporate the "community standards" test, suppress substantially more speech

---

[5] In addition to prohibiting "obscene" material, Section 223(d) also prohibits "child pornography."  The defendants raise no facial challenge to this aspect of the statute.

[6] The defendants claim that the Supreme Court has moved away from treating obscenity as "unprotected speech."  (Stagliano Mem. [#21] at 10).  They point to *R.A.V. v. City of St. Paul* where the Supreme Court made clear that even though certain categories of speech, such as obscenity and defamation, may "be regulated because of their constitutionally proscribable content," those categories are not "entirely invisible to the Constitution."  505 U.S. 377, 383 (1992) (emphasis omitted).  The defendants miss the point.  *R.A.V.* does not mean that "unprotected" categories of speech like obscenity and defamation can no longer be regulated based on their proscribable content.  It stands only for the proposition that those categories cannot "be made the vehicles for content discrimination *unrelated* to their distinctively proscribable content."  *Id.* at 383-84 (emphasis added).  Thus, for example, "the government may proscribe libel; but it may not make the further content discrimination of proscribing *only* libel critical of the government."  *Id.* at 384.  The obscenity statutes do not suffer this defect.  Even though they regulate constitutionally proscribable content, which is permissible, they do not discriminate on the basis of viewpoint.

than is constitutionally permissible when applied to the Internet.  Because Internet

publishers, unlike those who use mail or telephone, cannot limit the geographic

reach of the materials they post on the Internet, those materials are subject to the

community standards of the most conservative jurisdictions in the country.  Thus,

to avoid criminal liability, the publishers must either tailor their speech to conform

to those standards or abstain altogether from using the Internet as a medium for

their speech.  As a consequence, Internet speech that more permissive jurisdictions

would surely protect will be unconstitutionally burdened or chilled.   (Evil Angel

Productions [#17] at 4-8; John Stagliano Inc. [#20] at 10-12).

 Although a majority of Supreme Court justices in a splintered decision in

*Ashcroft v. American Civil Liberties Union (ACLU I)* voiced concern that a

"community standards" requirement, as applied in Internet prosecutions under the

Child Online Protection Act ("COPA"), poses overbreadth problems,[7] those

concerns hardly suffice to render the more narrow obscenity statutes

unconstitutional as applied to the Internet.  Indeed, notwithstanding their concerns,

---

 [7] For instance, Justice Kennedy, joined by two other justices, acknowledged
that the "national variation in community standards constitutes a particular burden
on Internet speech." *ACLU I*, 535 U.S. at 597 (Kennedy, J., concurring in the
judgment).  Similarly, Justice O'Connor wrote that "given Internet speakers'
inability to control the geographic location of their audience, expecting them to
bear the burden of controlling the recipients of their speech . . . may be entirely too
much to ask, and would potentially suppress an inordinate amount of expression."
*Id.* at 587 (O'Connor, J., concurring in part and concurring in the judgment).  In
somewhat more colorful language, Justice Breyer pointed out that applying "the
community standards of every locality in the United States would provide the most
puritan of communities with a heckler's Internet veto affecting the rest of the
Nation."  *Id.* at 590 (Breyer, J., concurring in part and concurring the in the
judgment).

an overwhelming majority of the Supreme Court held in *ACLU I* that "reliance on

community standards . . . does not *by itself* render [COPA] substantially overbroad

for purposes of the First Amendment."[8] 535 U.S. at 585 (emphasis in original).

The same rationale applies here. If COPA's incorporation of community

---

[8] In *United States v. Kilbride*, the Ninth Circuit held that the narrowest
reading of the splintered *ACLU I* decision required the court to accept the view of
Justices O'Connor and Breyer "that a national community standard must be
applied in regulating obscene speech on the Internet." 584 F.3d 1240, 1254 (9th
Cir. 2009). I disagree. Eight justices concurred in the judgment that the use of
community standards did not "*by itself* render the statute substantially overbroad."
*ACLU I*, 535 U.S. at 585. Justice Thomas, joined by Chief Justice Rehnquist and
Justice Scalia, did so based on their belief that COPA was sufficiently narrow in
application that any variation in community standards did not render the statute
substantially overbroad. *Id.* at 577-84 (Thomas, J.). The remaining five justices
indicated, however, that the possibility of varying community standards raised
potential constitutional concerns. Although Justice O'Connor favored a national
standard, she nevertheless affirmed the use of community standards because the
plaintiffs had failed to demonstrate substantial overbreadth due to excessive
variation among local communities. *Id.* at 586-89 (O'Connor, J., concurring in
part and concurring in the judgment). Unlike Justice O'Connor, however, Justice
Breyer concurred, not because of the plaintiffs' failure of proof, but because he
read the statutory term "community" to mean the Nation's adult community as a
whole. *Id.* at 589-91 (Breyer, J., concurring in part and concurring in the
judgment). Justice Kennedy, joined by Justices Souter and Ginsburg, affirmed the
judgment for much the same reason as Justice O'Connor. *See id.* at 597-602
(Kennedy, J., concurring in the judgment). They concluded that it was impossible
to "know whether variation in community standards renders [COPA] substantially
overbroad without first assessing the extent of the speech covered and the
variations in community standards with respect to that speech." *Id.* at 597. Of the
five justices who found the use of community standards to be constitutionally
problematic, only Justice Breyer based his decision on the belief that a national
community standard applied. Notwithstanding their concerns, the other four
justices were willing to accept the constitutional viability of community standards
in the absence of evidence establishing substantial overbreadth based on the
amount of speech covered and the degree of variance among communities.
Because Justice Breyer disregarded the possibility that local community standards
might be constitutional in light of the facts and circumstances of the case and
instead imposed a uniform national standard that no other justice thought was
necessary, his rationale is not the narrowest, and as a result, it does not control.

standards did not *by itself* render that statute substantially overbroad, then the obscenity statutes' incorporation of community standards does not—standing alone—render those statutes substantially overbroad. Not surprisingly, the defendants offer no argument—nor do they offer any evidence—that would justify holding otherwise.

Indeed, to the extent that the obscenity statutes are overbroad at all—which itself is debatable[9]—it stands to reason that the potential scope of that overbreadth

---

[9] Notwithstanding the concerns raised by some of the justices in *ACLU I*, it is questionable whether the application of community standards renders the *obscenity* statutes overbroad as applied to the Internet. Because the statutes are limited to the regulation of obscenity, they exceed their plainly legitimate scope only if they burden or chill speech that is actually protected by the First Amendment. In affirming the constitutionality of the "community standards" requirement, the Supreme Court in *Miller* explained that "[i]t is neither realistic nor constitutionally sound to read the First Amendment as requiring that the people of Maine or Mississippi accept public depiction of conduct found tolerable in Las Vegas, or New York City." 413 U.S. at 32. This point makes sense, however, only if the speech found tolerable in Las Vegas or New York, but regulable in Maine or Mississippi, is *not* entitled to full First Amendment protection. That more permissive jurisdictions choose not to punish speech that other jurisdictions may constitutionally proscribe does not entitle that speech to protection as a constitutional matter. This point is underscored by the Supreme Court's assurance in *Miller* that, under a national constitution, fundamental First Amendment limitations "do not vary from community to community." *Id.* at 30. Furthermore, in rejecting arguments that governmental regulation of obscene speech violates First Amendment norms, the *Miller* Court emphasized that the First Amendment "protects works which, taken as a whole, have serious literary, artistic, political, or scientific value." *Id.* at 34. Speech that some jurisdictions could constitutionally prohibit under the *Miller* test but that other jurisdictions would permit due to more permissive community standards necessarily lacks serious literary, artistic, political, and scientific value. Speech that had serious value would obviously be entitled to full constitutional protection in any jurisdiction. Therefore, because the defendants' overbreadth claim involves speech lacking in serious social value, it is doubtful whether that speech is even protected by the First Amendment. At the very least, the constitutional value of

is less extensive than the overbreadth resulting from COPA. After all, COPA threatened greater overbreadth because it regulated far more than obscenity—it regulated "material that is harmful to minors." 47 U.S.C. § 231(a)(1). Regulating a broader range of content "magnif[ies] the impact caused by differences in community standards across the country." *ACLU I*, 535 U.S. at 578 (plurality opinion). By contrast, the obscenity statutes are confined to the much narrower, legal definition of obscenity set forth in *Miller*. Presumably, the only protected speech burdened by those statutes on account of varying community standards are materials that lack serious literary, artistic, political, or scientific value but either do not appeal to the prurient interest or are not patently offensive in some, but not all, jurisdictions.[10] Because the obscenity statutes regulate significantly less content than COPA, the threat of substantial overbreadth due to varying community standards is reduced considerably relative to COPA. Therefore, to the extent that COPA's use of community standards did not—by itself—render that statute substantially overbroad, the Court can safely conclude that the use of community standards in prosecuting obscenity on the Internet does not—by

---

that speech is so slight (compared to speech that is found to have serious social value) that any burden imposed upon it does not justify the wholesale invalidation of the obscenity statutes as applied to the Internet.

[10] Unlike the "prurient interest" and "patently offensive" prongs, whether a work lacks serious literary, artistic, political, or scientific value does not depend on varying community standards but is judged by an objective "reasonable person" standard. *Pope*, 481 U.S. at 500-01. Thus, to the extent that the same work is constitutionally proscribed in one jurisdiction but permitted in another, the jurisdictions must agree, at a minimum, that the work lacks serious value. If it had serious value, then it could not be prohibited consistent with the Constitution in any jurisdiction.

itself—render Section 1465 and Section 223(d) substantially overbroad in

violation of the First Amendment.  Surely I cannot do to the obscenity statutes

what the Supreme Court was unwilling to do to COPA in the absence of evidence

of *substantial* overbreadth.[11]

**B.    "As A Whole" Requirement**

Of course, the defendants' do not necessarily contend that the "community

standards" requirement *alone* renders the obscenity statutes overbroad.  (Stagliano

Mem. [#21] at 23).  They contend that the "community standards" requirement,

coupled with the requirement that the allegedly obscene material be evaluated "as

a whole," *together* renders the obscenity statutes sufficiently overbroad as applied

to Internet speech.[12]  (*Id.*).  In particular, with respect to the "as a whole"

---

[11] The defendants' copyright argument, although rather novel, does not justify invalidating the obscenity statutes on their face.  First, any burden on a publisher's ability to register a copyright does not itself violate the Constitution because there is no constitutional right to copyright registration.  *Darden v. Peters*, 488 F.3d 277, 284 (4th Cir. 2007).  Second, to the extent that the inability to obtain copyright protection burdens the First Amendment rights of publishers whose works would be protected in one jurisdiction but not in the District of Columbia, the defendants' argument is nothing more than a regurgitation of their claim that *Miller*'s "community standards" requirement is overbroad as applied to publishers who cannot control the geographic reach of their allegedly obscene materials.  As I have already explained, that fact *alone* does not warrant invalidating the obscenity statutes charged in the Indictment.

[12] Although the point is not expressed in any detail, the defendants also suggest that the "community standards" requirement violates due process because it allows for selective prosecutions and forum shopping.  (Stagliano Mem. [#21] at 7, 20 & n.26, 23).  If the defendants mean that the "community standards" requirement empowers the government to impose the community standards of its preferred jurisdiction on nationwide speech, then this point is simply a restatement of the defendants' overbreadth argument, which the Court has already rejected.  If, however, the defendants mean that the "community standards" requirement

requirement, the defendants claim that the express language of Section 1645 and Section 223(d) permits individual items, such as a "picture" or "image," to be judged, not in context, but by themselves. (Evil Angel Productions [#17] at 12-13; John Stagliano Inc. [#20] at 9). Because a fact finder might consider an individual item obscene in isolation, but not in the context of a surrounding website, the defendants contend that the statutes are overbroad because they suppress or chill speech that would otherwise be protected. I disagree.

Since *Miller*, the Supreme Court has said that the standards announced in that case are applicable to federal legislation and that, to the extent any doubt exists about the constitutionality of a federal obscenity statute, courts are free to construe that statute in line with the *Miller* test. *United States v. 12 200-Foot Reels of Super 8mm Film*, 413 U.S. 123, 130 & n.7 (1973). Both statutes at issue here regulate "obscene" materials. Section 1465 regulates any "obscene . . . book, pamphlet, picture, film, paper, letter, writing, print, silhouette, drawing, figure, image, cast, phonograph recording, electrical transcription or other article capable of producing sound." 18 U.S.C. § 1465. Similarly, Section 223(d) regulates "any comment, request, suggestion, proposal, image, or other communication that[] is obscene." 47 U.S.C. § 223(d). By definition, no individual item can be found

---

empowers the government to act unfairly or improperly, then their argument fails because "in the absence of clear evidence to the contrary," courts presume that government agents "properly discharge[] their official duties." *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (internal quotation marks omitted). Speculative fear that the government might abuse its prosecutorial discretion is not grounds for invalidating an otherwise constitutional statute.

obscene under *Miller* if taken out of context.  The purpose of the "as a whole"

requirement is that any allegedly obscene material be judged, not in isolation, but

in the context of the work of which they are a part.  This point is well-

demonstrated by *Kois v. Wisconsin*, where the Supreme Court found it

unnecessary to evaluate individual pictures "because in the context in which they

appeared in the newspaper they were rationally related to an article that itself was

clearly entitled to [constitutional] protection."  408 U.S. 229, 231 (1972).

In any event, even if Section 1465 and Section 223(d) could be construed,

as the defendants suggest, to permit an individual item to be judged out of context,

this Court need not read the statutes that way.  Indeed, this Court cannot invalidate

an overbroad statute on its face if "a limiting construction or partial invalidation so

narrows it as to remove the seeming threat or deterrence to constitutionally

protected expression."  *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973).

Fortunately, such a limiting construction is readily available here.  Because the

obscenity statutes forbid the distribution of items that are obscene and because

*Miller* and its progeny define an item as obscene only in relation to the larger

work, the Court may reasonably construe the obscenity statutes to require that the

listed items be judged, not in isolation, but in the context of the surrounding work.

Given this construction, the relevant obscenity statutes do not run afoul of *Miller*'s

"as a whole" requirement.

Nor are Sections 1462 and 1465, which are charged in Counts One though

Five, unconstitutionally overbroad because they include the terms "lewd,"

"lascivious," "indecent," "filthy," and "vile." The defendants contend that those terms are undefined in the obscenity statutes and that, as a result, the statutes could be used to criminalize constitutionally protected speech that might be lewd or indecent, but not obscene, under the *Miller* test. (John Stagliano Inc. Mem. [#20] at 13-16). The defendants' argument, however, is foreclosed by the reasoning in *United States v. 12 200-Foot Reels of Film* and *Hamling v. United States*. In both cases, the Supreme Court stated that it would construe the generic terms in Sections 1461 and 1462, which are nearly identical to the terms in Section 1465, in accordance with *Miller*'s definition of obscenity. *12 200-Foot Reels of Film*, 413 U.S. at 130 n.7; *Hamling*, 418 U.S. 87, 114 (1974). Because the generic terms of the federal obscenity statutes are appropriately limited by judicial construction, the statutes are not overbroad. As such, the defendants' reliance on cases involving *state* obscenity statutes that include similar generic terms is entirely misplaced.

## II.  Vagueness

In addition to overbreadth, the defendants also contend that *Miller*'s "as a whole" requirement is unconstitutionally vague because it is unclear how that requirement would apply in the context of the Internet. (Stagliano Mem. [#21] at 18-22). Specifically, the defendants point to Justice Kennedy's concurrence in *ACLU I*, where he stated that it was "unclear whether what is to be judged as a whole is a single image on a Web page, a whole Web page, an entire multipage Web site, or an interlocking set of Web sites." *ACLU I*, 535 U.S. at 593 (Kennedy, J., concurring in the judgment).

Vagueness, of course, is essentially a doctrinal construct of the Fifth Amendment Due Process Clause.  A statute is invalid if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement."  *U.S. v. Williams*, 128 S. Ct. 1830, 1845 (2008).  In short, what matters is whether criminal culpability is tied to "wholly subjective judgments without statutory definitions, narrowing context, or settled legal meanings."  *Id.* at 1846.

Since *Miller*, the definition of obscenity and, in particular, the "as a whole" requirement have had a settled legal meaning.  Although the defendants contend that the meaning of "as a whole" is unclear as applied to the Internet, the Supreme Court has held that a "lack of precision is not itself offensive to the requirements of due process."  *Roth v. United States*, 354 U.S. 476, 491 (1957).  All that is required is sufficient warning:  "That there may be marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls is no sufficient reason to hold the language too ambiguous to define a criminal offense."  *Id.* at 491-92 (internal quotation marks omitted).

The same reasoning applies here.  Even if, as Justice Kennedy suggested in *ACLU I*, it is less than certain whether the "whole" work is a single image or the entire website, the "as a whole" requirement is no less clear in this case than in countless other cases where courts have applied that requirement in a new factual

16

setting.[13] Far from exposing the defendants to wholly subjective judgments, *Miller*'s definition of obscenity and, in particular, the "as a whole" requirement are sufficiently definite, even in the context of the Internet, to survive yet another constitutional challenge on vagueness grounds. As the Supreme Court itself announced when it decided *Miller*, the obscenity test "provide[s] fair notice to a dealer in [pornographic] materials that his public and commercial activities may bring prosecution." 413 U.S. at 27. Even though the defendants invite this Court to revisit that determination, I will not do so just because a new medium is in play. As a constitutional matter, I am confident that the relevant obscenity statutes, when read against the backdrop of a long line of Supreme Court cases defining obscenity, provide sufficient guidance to Internet publishers that whatever arguably obscene material they distribute on the Internet will be judged, not in isolation, but in context.

Having determined that Section 1465 and Section 223(d) are not unconstitutionally vague as applied to Internet speech, I will briefly address the defendants' argument that the entire website is the relevant work to be judged in

---

[13] *See, e.g., Erznoznik v. City of Jacksonville*, 422 U.S. 205, 212 n.7 (1975) (noting that "[s]cenes of nudity in a movie, like pictures of nude persons in a book, must be considered as a part of the whole work"); *Kois*, 408 U.S. at 231 (taking account, not only of the allegedly obscene poem, but also "its placement amid a selection of poems in the interior of a newspaper"); *Penthouse Int'l, Ltd. v. McAuliffe*, 610 F.2d 1353, 1368 (5th Cir. 1980) (deciding that magazines are "to be considered as whole works even though made up of separate articles"); *United States v. Various Articles of Obscene Merch., Schedule No. 2098*, 536 F. Supp. 50, 53 (S.D.N.Y. 1981) (holding that each film contained on a single video cassette is subject "to its own independent evaluation").

Counts Three and Seven of the Indictment. (John Stagliano Inc. Mem. [#20] at 16-17). Describing the movie trailer as just one small part of the overall Evil Angel website—which includes hundreds of other trailers, information about various Evil Angel productions, a newsletter, customer support and membership information, an on-line store, and links to other websites featuring both erotic and political content—the defendants analogize the website to a magazine, a book of collected works, or a catalogue. (Stagliano Reply [#26] at 3-5). The government argues that the trailer is a single work that should be judged independently. By comparison, it analogizes the website to an on-line store selling individual works with no meaningful connection to one another that would require contextualization. (Gov't Opposition [#23] at 7-8). The government relies in particular on *United States v. Various Articles of Obscene Merch., Schedule No. 2098*, where the District Court for the Southern District of New York held that each movie on a single video cassette was a separate work entitled to its own independent evaluation. 536 F. Supp. 50, 53 (S.D.N.Y. 1981).

Although the relationship between the website and the trailer obviously bear some similarity to the relationship between magazines and articles, books of collected works and the individual works, catalogues and the advertised products, as well as on-line stores and their merchandise, to analogize the website and trailer at issue here to any single kind of work is to lose sight of the fundamental purpose undergirding the "as a whole" requirement. In *Roth v. United States*, the Supreme Court approved a jury instruction that described the requirement this way: "The

books, pictures and circulars must be judged as a whole, in their entire context, and you are not to consider detached or separate portions in reaching a conclusion." 354 U.S. at 490 (internal quotation marks omitted). In short, what is important is that the allegedly obscene material be judged in context. The appropriate context in which to evaluate the trailer here is, *at a minimum*, the web page on which the trailer was posted. This is not to say that the government must prove that the entire webpage is obscene. The obscenity test, after all, is not quantitative. *Penthouse Int'l, Ltd.*, 610 F.2d at 1368. Rather, the government will have to show that the trailer is obscene in light of the surrounding webpage, not in isolation. During the course of the trial, the Court will address on a case-by-case basis whether the jury should have access to other pages of the website as well.

## III.   Substantive Due Process

Having disposed of the defendants' overbreadth and vagueness arguments, I now turn to their more sweeping claim that the entire prosecution should be dismissed because the Constitution creates a substantive due process right to sexual privacy that includes both the right of individuals to possess obscene material and, by extension, the right of publishers to provide that material to willing recipients. As a preliminary matter, I do not believe that Supreme Court precedent can be fairly read to support a First Amendment right to distribute obscene material in public. Indeed, although the Supreme Court has held in *Stanley v. Georgia*, 394 U.S. 557 (1969), that the mere possession of obscene materials in the privacy of one's home is protected by the First Amendment, *id.* at

568, subsequent decisions firmly establish that there is no corresponding right to

receive or distribute such materials. The Supreme Court has made clear that "the

protected right to possess obscene material in the privacy of one's home does not

give rise to a correlative right to have someone sell or give it to others." *12 200-*

*Foot Reels of Film* 413 U.S. at 128.[14]

Faced with this insurmountable case law, the defendants, like alchemists of

old, have conjured up an alternative theory based on evolving developments in the

Supreme Court's substantive due process jurisprudence.[15]  Relying on a long line

of privacy cases beginning with *Griswold v. Connecticut*, 381 U.S. 479 (1965),

and culminating with *Lawrence v. Texas*, 539 U.S. 558 (2003), they advance two

basic contentions:  (1) the sum of these cases establishes a constitutionally

protected liberty interest in sexual privacy, which includes the right to possess and

---

[14] *See also United States v. Orito*, 413 U.S. 139, 141-42 (1973) (rejecting "the idea that some zone of constitutionally protected privacy follows such material when it is moved outside the home area protected by *Stanley*"); *United States v. Reidel*, 402 U.S. 351, 354-55 (1971) (holding that the right announced in *Stanley* did not apply to those who "are routinely disseminating obscenity through the mails and who have no claim, and could make none, about unwanted governmental intrusions into the privacy of their home").

[15] It is doubtful whether the defendants' substantive due process argument can even be raised to circumvent the post-*Stanley* line of cases. The Third Circuit held in *United States v. Extreme Associates, Inc.* that even if *Lawrence* undermined the post-*Stanley* cases, those cases still control in light of *Agostini v. Felton*, 521 U.S. 203 (1997). *Extreme Associates, Inc.*, 431 F.3d 150, 155-56 (3rd Cir. 2005). As a result, the Third Circuit rejected a constitutional challenge to the obscenity statutes on the ground that the Supreme Court "has considered the federal statutes regulating the distribution of obscenity in the context of the broader constitutional right to privacy and [has] upheld them." *Id.* at 159. Whatever the merits of this point, it is academic because the Court is not persuaded that *Lawrence* cast any doubt on the post-*Stanley* cases.

the correlative right to distribute or obtain obscene materials; and (2) morality is not a rational, much less compelling, basis for overcoming that liberty interest. (Evil Angel Productions Mem. [#17] at 26-39; John Stagliano, Inc. Mem. [#20] at 20-27; Stagliano Mem. [#21] at 13-18).  As to both, I disagree.

First, I reject the notion that the liberty interest announced in *Lawrence* somehow includes a right to obtain or distribute obscenity.  The defendants misconstrue the nature of the liberty interest at stake in that case.  What is evident from the Supreme Court's decision is its intent to prevent the state from burdening certain intimate, consensual relationships by criminalizing the private sexual acts that are instrumental to those relationships.  In defining the contours of the liberty interest, the Supreme Court made a point to note that the statutes challenged in *Lawrence* "seek to control a personal relationship that . . . is within the liberty of persons to choose without being punished as criminals." 539 U.S. at 567.  The defendants, in effect, demean this liberty interest by defining it as a right to sexual privacy, when it is really about the right to form meaningful, personal bonds that find expression in sexual intimacy.  As the Supreme Court put it:  "When sexuality finds overt expression in intimate conduct with another person, the conduct can be but one element in a personal bond that is more enduring.  The liberty protected by the Constitution allows homosexual persons the right to make this choice." *Id.* The possession and use of obscenity are hardly analogous to the sexual acts that the *Lawrence* Court found to be so instrumental to the relationships of homosexual persons.  Indeed, the liberty interest that the defendants claim pales in comparison

to the liberty interest at stake in *Lawrence*.  Similarly, the purported right to obtain

or distribute obscenity does not remotely approach the fundamental liberty

interests implicated in *Griswold v. Connecticut*, 381 U.S. 479 (1965), and

*Eisenstadt v. Baird*, 405 U.S. 438 (1972), where the Supreme Court held that the

right to decide whether to bear or beget a child includes the right to obtain

contraceptives.  As a result, I reject the defendants' contention that *Lawrence* and

its predecessors created a so-called right to sexual privacy so fundamental and so

sweeping that it includes the right to obtain, as well as the correlative right to

distribute, obscene materials in the public marketplace, which the post-*Stanley*

cases repeatedly rejected.  Thus, absent clear support in the constitutional text or

in Supreme Court case law, I will neither certify the defendants' gold-toned

constitutional concoction, nor conjure one up on my own.

Furthermore, to the extent that *Lawrence* rejects public morality as a

legitimate governmental interest, it does so only in the narrow context of *private*

conduct that has no potential to harm others.  *Williams v. Morgan*, 478 F.3d 1316,

1322 (11th Cir. 2007).  The *Lawrence* Court made clear that its holding did not

extend to cases that "involve public conduct."  *Lawrence*, 539 U.S. at 578.  The

obscenity statutes, unlike the statute invalidated in *Lawrence*, do not target purely

private activity.  To the contrary, they target the public dissemination or the

possession for sale of obscene materials.  Although public morality may be an

insufficient justification for regulating private conduct in some cases, it is certainly

a sufficient justification for regulating the sort of public conduct at issue here.

Indeed, the Supreme Court has repeatedly upheld obscenity statutes on the basis

that the government can "legitimately act . . . to protect 'the social interest in order

and morality.'" *Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 61 (1973) (quoting

*Roth*, 354 U.S. at 485).

Because there is no substantive due process right to sexual privacy that

would include the right to obtain or distribute obscene materials and because the

government's interest in morality is a sufficient justification for regulating the

public dissemination of obscenity, I easily reject the defendants' substantive due

process challenge to the Indictment.

## CONCLUSION

The Supreme Court has warned that striking down a statute for overbreadth

is "strong medicine" that should be employed "sparingly and only as a last resort."

*Broadrick*, 413 U.S. at 613.  Having considered the defendants' overbreadth

arguments, I am not convinced that such strong medicine is warranted in this case.

Nor am I convinced that the federal obscenity statutes are unconstitutionally vague

as applied to Internet speech.  Finally, I reject the defendants' most sweeping

claim—that the entire Indictment is void because recent developments in Supreme

Court case law guarantee the right to produce and distribute obscenity.  Absent

binding precedent to the contrary, I will not create or enlarge unenumerated

constitutional rights of the kind that the defendants seek.  Although this case is not

the first to attack the constitutionality of federal obscenity statutes, it will not

likely be the last.  But for now, I see no reason to invalidate what the Supreme

Court has repeatedly upheld.  There being no convincing basis to set aside the obscenity statutes charged in the Indictment, the Court hereby DENIES the defendants' respective Motions to Dismiss.


RICHARD J. LEON
United States District Judge