**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

_____

**UNITED STATES OF AMERICA,**

v.  Case No. 1:08-CR-00093-RJL
     Hon. Richard J. Leon

**JOHN STAGLIANO,**

**JOHN STAGLIANO, INC.,**

**EVIL ANGEL PRODUCTIONS, INC.**

_____

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' JOINT MOTION TO PUBLISH EACH OF THE MOVIES AND THE MOVIE TRAILER CHARGED IN THE INDICTMENT IN THEIR ENTIRETY AS DEFENSE COUNSEL DEEM APPROPRIATE DURING CROSS EXAMINATION OR DURING THE DEFENDANTS' CASE-IN-CHIEF**

INTRODUCTION

During the hearing held by the Court on June 2, 2010, the Court ruled, over defendants' objections, that the government was not required to publish to the jury the entirety of the movies and the motion-picture trailer charged in various counts of the indictment. Defense counsel advised the Court that defendants desired to exercise their right to publish as they deemed appropriate the entirety of the charged movies and move trailer during cross examination or

during the defendants' case-in-chief.  The Court reserved judgment on these issues and allowed defendants to submit a motion addressing the questions.

I. **DEFENDANTS HAVE THE RIGHT UNDER <u>MILLER v. CALIFORNIA</u> TO PUBLISH AS A WHOLE TO THE JURY EACH OF THE MOVIES AND MOVIE TRAILER CHARGED IN THE INDICTMENT**

In <u>Miller v. California</u>, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), the Supreme Court set forth its well known standard for determining whether a targeted work is obscene:  (1) would the average person, applying contemporary community standards, find that the work, *taken as a whole*, appeals to the prurient interest; (2) does the work depict or describe, in a patently offensive way, sexual conduct specifically defined by applicable state law; and (3) does the work, *taken as a whole*, lack serious literary, artistic, political, or scientific value.  <u>Id</u>. at 24, 93 S.Ct. 2607 (emphasis added).

As emphasized above, the language of <u>Miller</u> plainly requires that, when considering the issues of prurient appeal and serious literary, artistic, political, or scientific value, the allegedly obscene material must be "taken as a whole."  Indeed, as far back as <u>Roth v. United States</u>, 354 U.S. 476 (1957), the expansive nature of the jury's investigation into the content and character of the work was recognized.  Notably, the trial judge in <u>Roth</u> charged the jury that "the books, pictures and circulars must be judged as a whole, in their entire context, and you are not to consider detached or separate portions in reaching a conclusion."  <u>Id</u>. at 490.  The Supreme Court reiterated the importance of context in <u>Kois v. Wisconsin</u>, 408 U.S. 229 (1972), when it reversed Kois' conviction for obscenity, finding that photographs and a poem entitled "Sex Poem" were not obscene:

> We find it unnecessary to consider whether the State could constitutionally prohibit the dissemination of the pictures by themselves, <u>because in the context in which they</u>

2

**Formatted:** Font: Times New Roman

> appeared in the newspaper they were rationally related to an article that itself was clearly entitled to the protection of the Fourteenth Amendment
>
> . . .
>
> In this case, considering the poem's content and its placement amid a selection of poems in the interior of a newspaper, we believe that it bears some of the earmarks of an attempt at serious art.

Id. at 231(citation omitted; emphasis added).

Miller's work-as-a-whole requirement may have derived from the Court's earlier holding in Roth, but it is a basic constitutional obligation even where the material at issue is not just a book with a few graphic passages. When Roth was decided and for a few years thereafter, the government still prosecuted steamy novels such as "Fanny Hill." E.g., Memoirs v. Massachusetts, 383 U.S. 413 (1966). But in the years leading up to Miller, the prosecution of books was abandoned entirely, and the nature entertainment patronized by the mass audience changed as the culture was transformed, with films such as "Deep Throat" achieving national prominence. Along with these changes, obscenity prosecutions were limited to hard core depictions of sexual activity as specifically defined by law. The Court in Miller defined such materials as including "patently offensive presentations or depictions of ultimate sex acts, normal or perverted, actual or simulated and patently offensive representations or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals," and it held that obscenity "must be limited to works which, taken as a whole, appeal to the prurient interest in sex, which portray sexual conduct in patently offensive way, and which . . . do not have serious literary, artistic, political, or scientific value." 413 U.S. at 24 (emphasis added). Given the context in which Miller was decided, it is vital that the jury consider the work as a whole, even if it includes extensive depictions of sexual behavior and not just a few selected passages. The Miller test was

the product of a time when contemporary community standards were in a state of flux, and the Court was not fashioning a standard just to protect edgy literature or medical textbooks.[1]

Accordingly, in the instant case, even if the Court refuses to require the government to present the movies and movie trailer charged in the indictment as a whole to the jury, the mandate of Miller requires that defendants be permitted to put the entire charged works in context for the jury so that there is an assurance that any verdict rendered by the jury occurs only after the jury has judged the works as a whole. The constitutional test for determining obscenity unquestionably requires that the charged materials be "taken as a whole" with respect to the first and third prongs of the Miller formula, and defendants are authorized under Miller to ensure that the full review required by the Supreme Court in Miller and Roth occurs.

II. **THE SIXTH AMENDMENT GUARANTEES DEFENDANTS' RIGHTS TO PUBLISH THE MOVIES AND MOVIE TRAILER CHARGED IN THE INDICTMENT AS A WHOLE TO THE JURY DURING CROSS EXAMINATION OR ON DEFENDANTS' CASE-IN-CHIEF**

Defendants' Sixth Amendment rights to Confrontation and to chart the course of their own defense are implicated here. The government has charged defendants with various counts of obscenity, and will presumably present witnesses to substantiate those charges. The right to cross-examine prosecution witnesses is a fundamental guarantee of the Confrontation Clause of the Sixth Amendment. United States v. George, 532 F.3d 933, 935

---

[1] In this respect, the evidentiary requirements are substantively different from other crimes that lack a work-as-a-whole requirement. Thus, for example, the government may not be required to publish the entire contents of a wiretapped conversation in open court where bribery is alleged, but that charge does not require consideration of the conversation "as a whole" where the evidence otherwise establishes a violation of law. Obscenity is materially different from other offenses, and cannot be established without consideration of the work as a whole.

(D.C. Cir. 2008), citing Delaware v. Van Arsdall, 475 U.S. 673, 678-79 (1986).  To deprive defendants of the opportunity to cross examine government witnesses on the whole of the materials in issue would deny defendants a fundamental right and would constitute reversible error.

Finally, defendants each possess the right to chart the course of their defenses as they deem appropriate.  As the Supreme Court emphasized in Faretta v. California, 422 U.S. 806 (1975):

> The rights to notice, confrontation, and compulsory process, when taken together, guarantee that a criminal charge may be answered in a manner now considered fundamental to the fair administration of American justice-through the calling and interrogation of favorable witnesses, the cross-examination of adverse witnesses, and the orderly introduction of evidence. In short, the Amendment constitutionalizes the right in an adversary criminal trial to make a defense as we know it.

Id. at 818 (citation omitted).  Should the Court refuse to permit the defendants to introduce the entirety of the charged movies and movie trailer as they deem appropriate during cross examination or during the defendants' case-in-chief, the Court will have wrongly truncated the Miller test—the elements of which constitute the constitutionally-mandated method of determining whether expression is protected by the First Amendment—and will have denied defendants their Sixth Amendment rights to confrontation and a defense of their choosing.

Consequently, defendants jointly move this Court for permission to present the movies and movie trailer charged in the indictment as a whole to the jury as defense counsel deems appropriate during cross examination or on defendants' case-in-chief.

**Formatted:** Font: Times New Roman

Respectfully submitted,

s/Paul J. Cambria, Jr./
Paul J. Cambria, Jr.
Roger W. Wilcox, Jr.
Lipsitz Green Scime Cambria LLP
42 Delaware Avenue
Buffalo, New York  14202
Telephone:  (716) 849-1333
Facsimile:  (716) 855-1580
Attorney for Evil Angel Productions, Inc.

 s/Allan B. Gelbard, Esq./
Allan B. Gelbard, Esq.
THE LAW OFFICES OF ALLAN B. GELBARD
15760 Ventura Blvd., Suite 801
Encino, CA 91436
Tel: (818)386-9200
Fax: (818)386-9289
Pro Hac Vice - CA Bar # 184971
Counsel for Defendant John Stagliano

 s/ H. Louis Sirkin/
H. Louis Sirkin (Ohio Bar No. 0024573)
Jennifer M. Kinsley (Ohio Bar No.  0071629)
Sirkin Kinsley & Nazzarine, Co. LPA
810 Sycamore Street
Second Floor
Cincinnati, Ohio 45202
Telephone: (513) 721-4876
Telecopier: (513) 721-0876
Counsel for Defendant John Stagliano, Inc.

s/ Robert Corn-Revere/
Robert Corn-Revere
Davis Wright Tremaine LLP
1919 Pennsylvania Avenue NW Suite 200
Washington, DC 20006
Tel: (202) 973-4200
Fax: (202) 973-4499
D.C. Bar # 375415
Local Counsel for Defendants John Stagliano and John Stagliano, Inc.

6