# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | )    **Criminal Case No. 08-93 (RJL)** |
| | ) |
| JOHN STAGLIANO, | ) |
| JOHN STAGLIANO, INC., | ) |
| EVIL ANGEL PRODUCTIONS, INC.,) | |
| | ) |
| Defendants. | ) |

**FILED**

AUG 0 4 2010

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

## MEMORANDUM OPINION
(July 3*, 2010) [#53, 82]

The defendants John Stagliano, John Stagliano, Inc., and Evil Angel

Productions, Inc., were charged in a seven-count Indictment with violating several

federal obscenity statutes.[1]  In essence, the government accused them of distributing

in interstate commerce two obscene movies titled "Milk Nymphos" and "Storm

Squirters 2 'Target Practice'" and a movie trailer titled "Fetish Fanatic Chapter 5" that

was posted on a website allegedly owned by the defendants.[2]  Prior to the trial, the

defendants filed a Motion in Limine [#53] requesting that the Court compel the

---

[1] Among the statutes charged in the Indictment were:  (1) 18 U.S.C. § 1465, transporting obscene matters for sale or distribution; (2) 18 U.S.C. § 1462, using a common carrier or interactive computer service to transport obscene matters; (3) 18 U.S.C. § 1466, engaging in the business of selling or transferring obscene matter; and (4) 47 U.S.C. § 223(d), displaying obscene material on the Internet in a manner available to persons under 18.

[2] Ultimately, I dismissed with prejudice Counts 3 and 7 and part of Count 6, all involving the movie trailer, because the FBI's original disc containing the trailer was so defective that it was not sufficiently reliable to be introduced into evidence.  As for the remaining counts involving the two full-length movies, I granted the defendants' motion for judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure due to the inadequacy of the government's proof linking the defendants to the distribution of the movies into the District of Columbia.

government, not only to *introduce* into evidence the entirety of the charged films, but

to *publish* the films in their entirety in open court as part of its case-in-chief.

Altogether, the two movies and the trailer take approximately five-and-a-half hours to

play in real time.  The government opposed the defendants' motion, indicating instead

that it would introduce the entire films into evidence but would limit the publication

of each film in open court to representative samples accompanied by a summary

witness, who would describe the remaining portions.  On June 2, 2010, I denied the

defendants' motion without further explanation, but left open the question whether the

defendants could publish the entire films or, at the very least, whether they could

publish the remaining portions of the films as part of their cross-examination of the

government's witnesses or as part of their case-in-chief.  The defendants promptly

filed another motion [#82], which the government did not oppose, seeking permission

to publish the entire films as they deemed appropriate.  On July 13, in a ruling from

the bench, I articulated the rationale for my earlier decision denying the defendants'

first motion, and I announced my decision to deny their second.  This Memorandum

Opinion sets forth more fully the reasoning for both rulings.

## DISCUSSION

### I.  Motion In Limine To Compel Government To Publish Charged Films

As grounds for their initial Motion in Limine, the defendants contended that

the "as a whole" requirement of the obscenity test announced by the Supreme Court in

*Miller v. California*, 413 U.S. 15 (1973), required the government to show each work

from beginning to end to satisfy its burden of proof.  The "as a whole" requirement

applies to the first and third prongs of the *Miller* test.  Under the first prong, the government must prove beyond a reasonable doubt that, according to contemporary community standards, the charged work, *taken as a whole*, appeals to the prurient interest.  *Id.* at 24.  Under the third prong, the government must prove beyond a reasonable doubt that the work, again *taken as a whole*, lacks serious literary, artistic, political, or scientific value.  *Id.*  The defendants argued that, unless the government played the entire films to the jury in open court, there would be no "guarantee" that the jurors would actually view the films in their entirety and thus be able to judge them as a whole.  Because jury deliberations are generally considered to be sacrosanct, the defendants stressed that "the only way to *truly ensure* that the jury has viewed the material as a whole would be to require the jury to view the material in open court."  (Defs.' Mot. in Limine [#53] at 6 (emphasis in original)).  A conviction in which the jury failed to view the films in their entirety would, according to the defendants, violate their First Amendment and due process rights, since those films cannot be adjudged obscene without evaluating the prurient appeal and serious literary, artistic, political, and scientific value of the films, taken as a whole.

I denied the defendants' motion because it rested on a *non sequitur*.  Central to the defendants' argument was the premise that jurors cannot properly judge a work as a whole unless they view it in real time from beginning to end.  Common sense tells us, however, that a juror need not view every frame of a film or, for that matter, every word of a book or every page or picture in a magazine in order to determine whether a given work, taken as whole, appeals to the prurient interest and lacks serious literary,

3

artistic, political, or scientific value. Thus, quite predictably, the defendants could cite no federal case in which a court required the government to play every frame of film, or read aloud every word of a book or magazine, in open court to *ensure* that the jury judged it as a whole.

Indeed, the notion that a work need not be viewed in its entirety to be appraised as a whole is entirely *consistent* with the logic behind the "as a whole" requirement. It is clear from *Miller* and the cases leading to it that the Supreme Court sought to prevent the government from introducing only those portions of a work that, it believed, appealed to the prurient interest or lacked serious literary, artistic, political, or scientific value without giving the jury access to the remainder of the work so that it could evaluate the questionable portions in their proper context. To criminalize an entire work based solely on isolated excerpts taken out of context would, of course, stifle the free expression that the First Amendment was meant to foster. Indeed, in *Roth v. United States*, 354 U.S. 476 (1957), the Supreme Court expressly rejected an earlier standard for determining obscenity that "allowed material to be judged merely by the effect of an isolated excerpt upon particularly susceptible persons." *Id.* at 488-89. The *Roth* Court went on to approve a jury instruction directing that "'[t]he books, pictures and circulars must be judged as a whole, in their entire context, and you are not to consider detached or separate portions in reaching a conclusion.'" *Id.* at 490. As I stated in an earlier opinion in this case, "[t]he purpose of the 'as a whole' requirement is that any allegedly obscene material be judged, not in isolation, but in the context of the work of which they are a part." *United States v. Stagliano*, 693 F.

4

Supp. 2d 25, 34 (D.D.C. 2010).  In an unpublished opinion that I find persuasive, the Eleventh Circuit explained that the requirement serves two purposes: "(1) it places materials in their proper context so that a jury may properly determine if the material is truly of prurient appeal; and (2) it ensures that any literary, artistic, political, or scientific value endowed in the material by its surrounding context is not lost by viewing the material in isolation." *United States v. Little*, 365 Fed. Appx. 159, 164 (11th Cir. 2010) (per curiam) (unpublished).

The juror's task, therefore, is to view the potentially obscene parts of the work in their proper context and, in so doing, to judge whether the work appeals to the prurient interest and whether it lacks serious literary, artistic, political, or scientific value.  Each individual work must be considered as a *complete* work, not based on isolated portions taken out of context.  But that task in no way requires the juror to view every bit of a work.  Repetitive sexually-explicit portions that neither alter the determination of a work's prurient appeal nor add some plausible literary, artistic, political, or scientific value are entirely irrelevant to the "as a whole" analysis.  *Cf. id.* (explaining that "[i]f the website in which material is found does not alter the determination of its prurient appeal or add some redeemable quality to the work, then the website is not necessary for the 'taken as a whole' analysis").

Thus, it was no surprise that the defendants could not cite a single case from the Supreme Court or from our Circuit that requires the jury to watch every frame of a movie or read every word of a book or view every page or picture in a magazine to satisfy the "as a whole" element of the *Miller* test.  After all, the jury's duty is to

5

ensure that whatever portions of a given work are thought to make the work obscene are judged, not in isolation, but in the context of the larger work. But to put those portions into context does not necessarily require that the jury view the entire work from beginning to end. The jury may rely, for instance, on summary testimony from witnesses who have viewed the remaining portions of the work and are subject to cross-examination. It is, after all, a common practice in federal court to allow witnesses to summarize evidence at trial that will be available to the jury during its deliberations. Rule 1006 of the Federal Rules of Evidence provides, for instance, that the "contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation." Fed. R. Evid. 1006. To provide context, the jury may also rely on other excerpts from the work that either the government or defense presented at trial or that the jury itself viewed during its deliberations.

So long as the government introduces the entire work into evidence for the jury to view as it sees fit during its deliberations, the government need not publish the entire work to the jury in open court to satisfy its burden of proof. In that regard, I am persuaded by an unpublished opinion from the Fourth Circuit, *United States v. Adams*, 337 Fed. Appx. 336, 338-39 (4th Cir. 2009) (per curiam) (unpublished), that the government can indeed satisfy its burden by playing representative samples of a charged work in open court with the aid of a witness—subject, of course, to cross-

examination—who can put the samples into context by summarizing the portions of the work that are not shown.[3]

The defendants' concern about the inviolability of the jury deliberation process is, to say the least, overblown. It is no *per se* violation of the defendants' First Amendment and due process rights if the jury deliberates for less than the amount of time it would take to view all three films from beginning to end in real time. For reasons that I just explained, *Miller* does not require that the jury view every frame of the charged films, nor does it require that the jury view each film in real time. Indeed, it would be acceptable as a constitutional matter for the jurors to fast-forward over whatever portions of the film they have reason to believe contain gratuitous and repetitive sexually-explicit activity that bears little relation to the plot, or that is unnecessary to understand the meaning of the film. So long as the Court properly instructs the jury on the legal requirement that they judge the prurient appeal and literary, artistic, political, and scientific value of the film, taken as a whole, by considering whatever portions of the film are shown at trial in their proper context, the jurors are free to evaluate the evidence in any manner they wish in accordance with those instructions. And, of course, it is well-established that "juries are

---

[3] With little argument, the defendants hinted that the government's failure to play the entire films in open court could potentially violate the "best evidence" rule since the jury could base its decision on the summary witness's testimony about the films, rather than on the films themselves. This so-called "best evidence" rule provides that "[t]o prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required." Fed. R. Evid. 1002. By introducing the original films into evidence in their entirety, the government clearly satisfied that rule. The use of summary witnesses, which is permitted by the Rules, is merely a tool of convenience, not a wholesale substitute for the actual films that are introduced into evidence at trial.

presumed to follow [the Court's] instructions." *Richardson v. Marsh*, 481 U.S. 200,

211 (1987).

    Also unpersuasive is the defendants' claim that allowing the government to

play samples of the movies somehow

> forces the Defendants into a 'Catch-22' of choosing between, on the one
> hand, playing the movies in order to show the jury context and to avoid
> waiving this issue on appeal, or, on the other hand, choosing to not play
> the rest of the movies and thereby allow the jury to falsely believe that
> these excerpts are representative.

(Defs.' Reply to Government's Opp'n to Defs.' Mot. in Limine [#72] at 6).  I fail to

see how allowing the government to present its case in the manner that it wishes

would necessarily produce a no-win, "Catch-22" situation for the defendants.  After

all, if the defendants play additional samples of the films as part of their case-in-chief

that add context favorable to their case or that demonstrate, for instance, the artistic

merit of the film not otherwise evident in the government's samples, then the

defendants will obviously benefit.  That is hardly a "no-win" alternative.  Indeed, it is

a potentially winning alternative to the extent that it strengthens the defendants' case.

    Accordingly, for all the foregoing reasons, I rejected the defendants' rather

unusual effort to dictate how the government would present its case.[4]

---

[4] As it turned out, the government showed in open court an approximately 50-
minute excerpt from "Milk Nymphos" and a 35-minute excerpt from "Storm Squirters
2 'Target Practice.'"  The FBI agent who summarized the remaining portions of each
film was thereafter cross-examined by each defense counsel without any attempt, or
even a request, to play any other portions of the two films.

## II.    Defense Motion To Publish The Charged Films In Their Entirety

Even though I denied the defense motion to compel the *government* to play the charged films in toto, I reserved the question whether the *defendants* could play the entire films or, at the very least, whether they could play the remaining portions of the films as part of their cross-examination of the government's witnesses or as part of their case-in-chief. The defendants raised essentially two arguments supporting their contention that they were legally *entitled* to show the entirety of the charged films.

First, they reiterated their argument that *Miller*'s mandate to take the works as a whole required the jurors to view each charged work from beginning to end in real time. Failure to do so, according to the defendants, would violate their First Amendment and due process rights. For the reasons I just explained, however, one need not, as a practical matter, view an entire work in order to take a fair measure of it as a whole—that is, as a complete work. Nor does *Miller*, its progeny, and the case law in our Circuit specifically require a juror to view the entirety of a charged work in order to satisfy the "as a whole" requirement. Because a work need not be viewed in its entirety to be judged as a complete work, the *Miller* test does not provide a basis for the defendants' claimed entitlement to play the entire charged films on cross-examination or as part of their case-in-chief.

Second, the defendants contended that their Sixth Amendment right to confront the government's witnesses and to put on a defense means that they are entitled to show whatever portions of the films are necessary to cross-examine the government's witnesses or to establish their defense—including, if need be, the entire films. I do

not disagree that the defendants may show portions of the films that they can demonstrate are needed to cross-examine the government's witnesses or to establish their defense.  The defendants do not have, however, a categorical legal right to show in open court the entirety of the charged films.

Their right to confront opposing witnesses through cross-examination and to put on a defense of their choosing, while robust, is nevertheless constrained by the Court's power and discretion to control the mode by which the parties present evidence.  Under Federal Rule of Evidence 611, "the court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to . . . make the interrogation and presentation effective for the ascertainment of the truth [and to] avoid needless consumption of time."  Fed. R. Evid. 611.  It is no aid to the ascertainment of the truth, nor is it an efficient use of the Court's time, to allow the defendants to play portions of the charged films containing gratuitous scenes of repeated sexually-explicit activity that shed little or no light on the plot or meaning of the films, that add no context to the excerpts already shown by the government, and that no reasonable juror would find to lack prurient appeal or to have serious literary, artistic, political, or scientific value.  Accordingly, I declined to permit the defendants to play the entire full-length films as of right.  In that respect, I denied their motion.

I did rule, however, that the defendants were permitted to play those portions of the films that they could demonstrate were necessary:  (1) to cross-examine a government witness; (2) to put the government's representative samples into context; or (3) to show that the films did not appeal to the prurient interest or that they did not

lack serious literary, artistic, political, or scientific value. In short, absent a colorable argument by the defendants that the additional segments they sought to play would actually aid their defense, I refused to allow the segments to be played in open court during the course of the trial, knowing, of course, that the jury would be free to watch the entirety of the charged films during its deliberations.

## CONCLUSION

The defendants took a particularly aggressive position regarding the procedural approach to the trial of this case. In effect, they argued that a film—no matter how long or sexually explicit—must be shown to the jury in its entirety in open court to ensure that the jury satisfies *Miller*'s mandate that the film be "taken as a whole" to determine whether it appeals to the prurient interest or lacks serious literary, artistic, political, or scientific value. Implicit in their argument is the flawed premise that a work must actually be viewed in its entirety in order to be judged fairly as a whole. In short, the defendants erroneously conflated the task of reviewing a film from beginning to end in real time with the task of judging the film as a complete work. Because the former is not necessary to accomplish the latter, I rejected the defendants' argument and accordingly denied both of their motions.

RICHARD J. LEON
United States District Judge